

**United States Department of State**

*Bureau of Educational and Cultural Affairs*
*Washington, D.C. 20547*

www.state.gov

February 17, 2004

**ACTION MEMORANDUM**

MEMORANDUM FOR:   ECA-IIP/EX -    Mr. Bill Terrini
                                  Acting Executive Director
                                  Ms. Katherine Yemelyanov
                                  Deputy Executive Director

                  ECA-IIP/EX/HR - Ms. Jackie Hill
                                  Human Resources Manger

FROM:             ECA-IIP/EX/G -  Donald S. Hunter  *DSH*

SUBJECT:          Vacant GS-13 Grants Specialist position

## Introduction

The Bureau of Educational and Cultural Affair, Executive Office, ECA-IIIP/EX has a vacant GS-13 Grants Specialist position in the Grants Division. Attached is my application for consideration as a direct hire or noncompetitive appointment to the vacant GS-13 Grants Specialist position under the authority of 5 CFR 330.101 and 335.103(c)(3).

## Background

I am currently work as a GS-12 Grants Specialist in the Grants Division. Mr. Ben Castro, ECA-IIP/EX former Deputy Executive Director in consultation with Ms. Fannie Allen, Chief of the Grants Division and the Human Resource office, issued the June 24, 2002 attached memo in response to my 2002 request for a promotion. The June 24, 2002 memo clearly states that I would be given consideration when a GS-13 position in the Grants Division becomes available. Due to Ms. Joyce Love retirement on January 2, 2004, the Grants Division now has a vacant GS-13 Grants Specialist position.

Attachment C

Ms. Allen has no intention of advertising the vacant Grants Specialist position as a GS-13. Ms. Allen has reassigned Ms. Love's work to the remaining Grants Specialists in the office. None of Ms. Love's complex large dollar grants, audits or special projects was reassigned to me. Instead the GS-13's and Ms. Julie Johnson a GS-9 received Ms. Love's GS-13 level work.

## Conclusion

That Ms. Love's GS-13 level work is reassign to Mr. Donald S. Hunter. ECA's Human Resource office, prepare the SF 52 to fill the vacant GS-13 Grants Specialist position in the Grants Division with Mr. Hunter as a direct hire.

Approve _____   Disapprove _____   Discuss _____

That Ms. Love's GS-13 level work is reassign to Mr. Donald S. Hunter. ECA's Human Resource office, prepare the SF 52 to fill the vacant GS-13 Grants Specialist position in the Grants Division with Mr. Hunter as a noncompetitive promotion.

Approve _____   Disapprove _____   Discuss _____

**Mr. Donald S. Hunter, Sr.**
2345 Barkley Place
Forestville, MD 20747
202-203-7173 (Work)
301-967-0101 (Home)
Email: HunterDS@state.gov

**Social Security Number:** 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
**Country of Citizenship:** United States of America
**Veteran's Preference:** No
**Highest Grade:** GS-1101-12/4, 11/99 - Present

**Contact Current Supervisor:** Yes

**VACANCY INFORMATION:**

Announcement Number: Direct Hire or Noncompetitive appointment

Job Title: Grants Specialist

Grade(s) applying for: GS-13

**OBJECTIVE:**

>   Pursuing opportunities as a senior Grants Specialist that utility my training and grants management experience.

**WORK EXPERIENCE:**

| | |
|---|---|
| U.S. Department of State<br>ECA-IIP/EX/G, Office of the<br>Executive Director, Grants Division<br>301 4th Street, SW, SA-44<br>Washington, D.C. 20547 | Dates Employed: 11/1997 - Present<br><br>Grade Levels GS-12/4<br>Salary: $64,000<br><br>Hours per Week: 40 |

Grant Officer, 1101
Overall responsibilities include a full range of grant management functions, including pre-award, budget review, conducting cost/pricing analysis, negotiation, conducting training, administration for the most complex grants, post-award closeout and audit resolution. Specific duties included but are not limited to:

Perform a variety of pre award functions, which include reviewing multi-million dollar budgets and collaborating with Program Officer, to develop a mutual understanding of the program concerned and current year grant funding allocation.

Analyze cost data submitted by applicants to substantiate program and administrative expenses, which include direct and indirect costs. Conduct studies of specific questionable costs, and analyze terms and conditions of previous awards.

Develop unique grant and cooperative agreement provisions, which relate to the specific program objective and agreements reached by the DOS and the Recipient during negotiations. Design final award documents and make recommendations, review agreements for legal and administrative compliance. Prepare novation agreement to transfer a grant from one grantee to another.

Participate in conducting training workshops for program offices and grantees on a variety of financial and administrative issues.

Serve as the ECA/IIP representative for the financial responsibilities of administering agreements and represents the Grants Division in conferences, which involve numerous high level officials.

Review program and financial reports to determine whether programs and operations adequately ensure financial accountability, to determine reasonableness of the various cost elements, to the extent of Government assistance. Also review a broad range of recipient actions and investigate and resolve problems such as questionable payments, project termination, inefficient operations, or cases of possible fraud.

Coordinate with the Office of Legal Adviser and the Office of the Inspector General on difficult legal and audit findings on programs, which require special handling.

Resolve audit reports with questionable costs and internal controls weaknesses issued by the Office of the Inspector General for resolution. Determine if questionable costs are allowable or unallowable based on the general and specific requirements of the grants and instances of noncompliance with OMB Circulars. Respond in writing to the grantees the questionable costs before making final determination and recommend corrective actions concerning internal controls weaknesses. Issue a final determination letter concerning allowable and unallowable costs to grantees.

Implementing new government wide/DOS grants management policies and procedures due to changes in laws and regulations. Provide authoritative assistance and advice to Program Offices and Recipients in interpreting the Federal Grant and Cooperative Act of 1977, Agency regulations, OMB Circulars and other broad guidelines.

Close out grants and cooperative agreements. Issue suspension and termination notices and review recipient appeals. (Supervisor's Name: Ms. Fannie Alien. Phone: 202 203-7175)

**Special Project Jan. 2000 to Aug. 2003**

Grants Division, PMS Team Leader

As the Team Leader for HHS/Payment Management System (PMS), served as the point of contract for the Division on all PMS issues. Analyzed ECA-IIP's current grantees financial history for selection to a PMS account. Drafted a letter to be used by team members to enroll grantees who have been determined eligible to be enrolled on PMS. Received from HHS Officials a Quarterly Closeout Report listing open and pending grants on PMS. Discussed with HHS Officials the procedures necessary to close grants, listed on the PMS Quarterly Closeout Report. Researched and gathered information on document (grant) numbers authorized, disbursed and charged amounts. Researched the different scenarios, as to why the three amounts did not equal. Provided guidance and advice to team members, to assist them on the closeout of documents (grant) numbers, either in the open or pending status. The number of open and pending document numbers on the report, were reduced by 30%, by the end of FY 2003.

Other Grants Division Special Projects

Completed several special projects including: 1) retired the Grants Division audit files, 2) ratification of MIC administrative & program funds overrun in FY 2000, 3) help ultimate the Grants Division back log of financial & program reports and worked with team members to retire old files.

**EDUCATION:**

Highest Level Completed: High School, 1976
H.D.Woodson, 55th & Eads Sts. N.E. Washington D.C.

University of the District of Columbia
Washington, DC
B.S., 1995
Major: Urban Planning
Minor: Accounting

**JOB-RELATED TRAINING COURSES:**

School Street Toastmasters Club #8072 - Present
Introductions to CFMS; 2003
Managing State Projects; 2002
OPM Leadership Potential Seminar; 2001
Introduction to Supervisory; 2000
Grants Managements Courses; 1998-1999
Procurement Planning; 1997
Introduction to Federal EEO Program; 1997
Federal Acquisition Regulation (FAR) Overview; 1996
Simplified Acquisition Procedures; 1996
Audit Training, Ft. Belvoir; 1993

**JOB-RELATED SKILLS:**

Strong project management, analyzing, evaluating, organizational, and planning skills, Proficient in the use of Window 98, Microsoft Word, Power Point, Paradox, Lotus Notes and Excel Spreadsheet.

**JOB-RELATED CERTIFICATES AND LICENSES:**

Grants Officer Warrant
Grants Managements Certification

**JOB-RELATED HONORS, AWARDS, MEMBERSHIPS, ECT.**

Individual Time-Off Award, 2003

Group Meritorious Honor Award, 2002

Meritorious Honor Award, 2002

Group Meritorious Honor Award, 2000

Special Project Honor Award Y2K, 2000

Meritorious Honor Award, 1999

Certificate of Appreciation 'CFC, 1998

USIA Mentoring Program Award, 1997

Special Achievement Award, 1997



## U.S. Department of State
## EMPLOYEE PERFORMANCE PLAN, PROGRESS REVIEW AND APPRAISAL REPORT
### GENERAL SCHEDULE, SENIOR LEVEL AND PREVAILING RATE EMPLOYEES

### SECTION I - EMPLOYEE DATA

**Employee Name** *(Last, First, Middle)*
Hunter, Sr.          Donald          S.

**Social Security Number** 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

**Position Title** Grants Specialist

**Period Covered**

**Office Symbol** ECA-IIP/EX/G

**From:** *(mm-dd-yyyy)*    01-01-2003

**Pay Plan, Series, and Grade** GS-1101-12

**To:** *(mm-dd-yyyy)*    03-09-2003

**Type of Report:**  ☐ Rating of Record or   **Interim Rating:**  (a) Employee Departure  ☐   (b) Change of Rating Official ☐   or  (c) Other ☐

### SECTION II - PERFORMANCE PLAN - JOB ELEMENTS AND PERFORMANCE STANDARDS

**PART 1 -- CERTIFICATION OF PERFORMANCE PLAN - JOB ELEMENTS and PERFORMANCE STANDARDS:**

A. ☒ The rating official and employee agreed to the Performance Plan on    11-04-2003    *(Date (mm-dd-yyyy)).*

B. ☐ If changes were made to the performance plan during the rating period, explain the change below and specify the date of the change.

C. ☐ The rating official and the employee did not agree on the Performance Plan, therefore, the rating official has informed the employee of the decision to establish the Plan and provided a copy of the Plan to the employee on _____ *(Date (mm-dd-yyyy)).*

Fannie L. Allen
**Type Name of Rating Official**

*[signature]* Fannie L. Allen    05/24/2004
**Signature of Rating Official**    **Date** *(mm-dd-yyyy)*

_____   _____
**Signature of Employee**    **Date** *(mm-dd-yyyy)*

_____   _____
**Signature of Reviewing Official**    **Date** *(mm-dd-yyyy)*

**PART 2 -- GENERIC PERFORMANCE STANDARDS:** The Generic Performance Standards are the primary basis for assigning element ratings in the Department of State. The Generic Performance Standards define levels of performance in terms of quality, quantity and extent of supervision required. The following definitions have been condensed. For the complete Generic Performance Standards (including standards for supervisory positions), refer to form DS-1966A, Generic Performance Standards.

**Outstanding:** This is a level of exceptionally high-quality performance. The quality and quantity of the employee's work substantially exceeds the fully successful standard and rarely leave room for improvement.
**Excellent:** This is a level of unusually good performance. The quality and quantity of work under this element are consistently above average.
**Fully Successful:** This is a level of good, sound performance. The quality and quantity of the employee's work under this element are those of a fully competent employee. The performance represents a level of accomplishment expected of a great majority of employees.
**Unacceptable:** The quality and quantity of the employee's work under this element are not adequate. The employee's work products fall short of requirements.

DS-1966
04-2001

Page 1 of 7

| Name of Employee | Hunter, Sr., Donald S. | SSN: | 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 |
|---|---|---|---|

**PART 3A -- CRITICAL & NON-CRITICAL JOB ELEMENTS:** A job element is a statement of the major work assignments and responsibilities. Job elements should be clear, concise and consistent with the objectives of the organization and the requirements established for other employees with similar responsibilities. Once the job elements are established, they must be designated as critical or non-critical. (At least *one* element must be critical.) *A critical job element* is a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable. A Performance Plan may contain up to a combined maximum of *five* critical and non-critical job elements (including mandatory elements such as "Supervision and Office Management", "Internal Controls", and/or "Security Awareness"; and no more than *two* "additional" elements. *(See instructions for definitions of non-critical and "additional" job elements.)*

**ELEMENT APPRAISAL:** Assess the employee's performance and assign an appraisal level that best describes the level achieved. O – Outstanding; E – Excellent; FS – Fully Successful; U – Unacceptable.

| JOB ELEMENT DESCRIPTION | ELEMENT APPRAISAL |
|---|---|

**JOB ELEMENT 1**
☒ Critical    ☐ Non-Critical

Appraisal: O ☐  E ☒  FS ☐  U ☐

Review all grantee proposals and amendment requests to ensure that they meet Department grant guidelines and OMB rules and regulations before awarding. Negotiates terms and conditions of the grant agreement with potential grantees and program office. Administers all assigned agreements which include guiding the grantees through the execution of the agreement, explaining the various aspects of compliance and providing advice and assistance to the grantee in carrying out the purpose of the agreement to ensure that the grantee fulfills the grant requirements. Upon requests, Officer provides advice and guidance to program officers on all grant agreements and amendments awarded.

**JOB ELEMENT 2**
☒ Critical    ☐ Non-Critical

Appraisal: O ☐  E ☒  FS ☐  U ☐

Officer receives and reviews interim and final reports on all assigned agreements to ensure that grantee is in compliance with agreement terms and conditions and has submitted all required reports. Officer is responsible for ensuring that funds were incurred for expenses as out lined in the grant and that the unexpended balance of funds has been returned to the Department and funds have been deobligated. Officer must ensure that file is closed out properly and ready for audit.

**JOB ELEMENT 3**
☒ Critical    ☐ Non-Critical

Appraisal: O ☐  E ☒  FS ☐  U ☐

Resolves audit reports of grantee organizations prepared by the Office of the Inspector General. Action on resolution of audit reports must begin 30 days from receipt of the audit report in the division. Final resolution of the audit should be accomplished within six months from the date of the issue.

| Name of Employee | Hunter, Sr., Donald S. | SSN: | 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 |
|---|---|---|---|

**JOB ELEMENT 4**
☐ Critical   ☒ Non-Critical

O ☐   E ☒   FS ☐   U ☐

Complies with all appropriate controls and procedures to protect organizational integrity and prevent unauthorized use or misappropriation of all classified and sensitive (but unclassified) material and equipment in assignment area(s); reports instances of security violations/problems to the appropriate supervisory/management official; assumes personal responsibility for safeguarding classified and sensitive (but unclassified) material and equipment within assignment area(s).

**JOB ELEMENT 5**
☐ Critical   ☐ Non-Critical

O ☐   E ☐   FS ☐   U ☐

**PART 3B -- ADDITIONAL JOB ELEMENTS:** Rating officials have an option of using "additional" job elements. Please read the paragraph below on the appropriate use of "additional" elements before proceeding:

"Additional" job elements are an aspect of individual, team, or organizational performance. "Additional" elements are not used in assigning the overall summary level. "Additional" job elements may be used to: communicate work objectives; performance expectations for teams, groups or organizations; and to provide feedback to employees on their individual performance of developmental assignments and on details that are less than 120 days. "Additional" elements need not be appraised at any particular level, or be included in the initial Performance Plan. No more than two "additional" elements can be used in an appraisal period. The Unacceptable level is not used when "additional" elements are appraised.

**ADDITIONAL JOB ELEMENT 1**

O ☐   E ☐   FS ☐

**ADDITIONAL JOB ELEMENT 2**

O ☐   E ☐   FS ☐

DS-1966

Page 3 of 7

| Name of Employee | Hunter, Sr., Donald S. | SSN: | 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 |
|---|---|---|---|

## SECTION III - NARRATIVE SUMMARY

The rating official must provide narrative that assesses the employee's accomplishments for each critical and non-critical job element. Describe how the employee's performance exceeded, met or did not meet the Generic or other approved performance standard.

Mr. Donald Hunter, as a Grants Specialist, has continued to perform in an excellent manner during the rating period. A Grants Specialist, with over 6-years experience, he has continued to work independently executed the processing of grants to monitor/manage the grants and cooperative agreement assigned to him as his primary responsibility while ensuring compliance with federal regulations.

Mr. Hunter provided assistance to the Program Office and the grantee - explaining the intricacies of the grant making process from conception to closeout. He administered many of the Department's major programs. He was responsible for the award and administration of over .... Grants during the rating period. His portfolio for fiscal year 2003 is valued at over $.... M. He administered agreements with the Wye River, Fulbright Senior Scholars, Muskie/Freedom Support Act Graduate Fellowship, and others. His multimillion-dollar portfolio is maintained through the Grants Management Information System, (GMIS). A database system he has learned to negotiate with ease.

Mr. Hunter, a professional Grant Specialist, was responsible and accountable for the work he performed during the rating period. He is very serious about the accountability expected from the Recipients in their use of government funds. Interim and financial reports were carefully reviewed for accuracy and completeness. Questionable areas are immediately brought to the attention of the Program Office, the Recipient and Team Leader if neccessary in order to achieve resolution. The careful and timely reviews of the reports facilitated closeout of the grant file. Supporting the Office policy on professional development, he mentored newly assigned Grant Specialist - answering questions and inviting them meetings outside of the office.

Mr. Hunter is credited with resolving his first OIG report on MCID. He volunteered to take over the work of the audit from a senior Grants Specialist; he willingly accepted this challenge as a means to enhance his technical skills in audit resolutions. Mr. Hunter reviewed and analyzed the questionable/unsupported costs and administrative noncompliance issues. As a result of his review MCID is purported to be performing grant management functions more in line with OMB regulations. Mr. Hunter, in his ongoing effort to support the grantee, plans a site visit to the grantee along with a member of the Office of Inspection General auditors to access the operating practices.

The Grants team experienced its first Departmental Inspection by the Office of Inspector General during the rating period. The Division (OIG Draft Report) received high marks for its work and concentrated support of customers.

Each member of the Grants Office attended the mandatory security briefings. The Grants Office does not handle classified documents on a routine basis. Classified documents that were received for review, information or comment were handled with care by storing them in a locked (Combination lock) file cabinet, returned to the originating office or shredded.

Mr. Hunter was encouraged, and he complied, to develop an IDP and to complete it in further enhancement of his performance.

Being a dependable and a resourceful team member, Mr. Hunter consistently takes a proactive and positive role in the performance of his assigned duty. He is a valuable member to the Division. Mr. Hunter is a valued member of the Grants staff. He was the recipient of a Time-Off Award for his accomplishments during the rating period.

Continued next page.

| Name of Employee | Hunter, Sr., Donald S. | SSN: | 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 |
|---|---|---|---|

## SECTION III - NARRATIVE SUMMARY

**CONTINUATION SHEET:** *This page may be used as a Continuation Sheet for the Narrative Summary, Employee and/or Reviewing Official Comments:*

Special Note:

The Grants Team, of which Mr. Hunter is a member has had an especially challenging, however successful year because of two major developments in the assistance area: One is the implementation of Public Law (PL) 106-107, which includes new requirements for standardization of policies and procedures government-wide in order to ease the burden on applicants and recipients for federal assistance. The other is the e-grants initiative from the President's Management Agenda.

The Grants Team has ensured that they remain alert to what has been going on throughout the government discussion on and the implementation of PL 106-107. The ECA Grants Division took the lead in researching, monitoring and responding to the proposed technological e-grants/Grants.gov changes projected for federal assistance. The Grants Team has consistently kept upper management informed about the multiple requirements and the time lines. This led to the involvement of added personnel, external to the Grants Division, who supported the internal milestones and requirements.

During this rating period, one major e-grant milestone passed - the requirement to post grant opportunities electronically -- and planning for a second commenced - the requirement to receive proposals for assistance awards electronically. On both the PL 106-107 and e-grants fronts, ECA has been in the lead for the Department. We were the only element of the Department that began posting its grant opportunities electronically on time.

Much of their ability to do so has been a result of a new Grant Management Information System (GMIS), a database and tracking system that came on line in 2002, and which the Grants Team has guided through a transition to its new role as the core of our e-grants responsiveness. The networking that the Grant Team needed to sustain in order to keep all of these initiatives moving - with the Office of the Procurement Executive, with the Bureau of Resource Management, with the Office of Grant Financial Management, other federal agencies and consulting firms, with our own resource management and technology staffs - have resulted in both a much better integrated operation and much keener appreciation of the quality of our grant administration.

Congratulations to the Grants Team for their on-going efforts to fulfill requirements above and beyond the day-to-day activities in the Division.

| Name of Employee | Hunter, Sr., Donald S. | SSN: | 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 |
|---|---|---|---|

### SECTION IV - SUMMARY LEVEL DETERMINATION, RATING OFFICIAL'S APPROVAL, AND EMPLOYEE COMMENTS

**PART 1 -- SUMMARY LEVEL DETERMINATION:** When a *rating of record* or an *interim performance* rating is prepared, an overall summary level must be assigned to the rating. Based on the level assigned to each critical and non-critical job element, rating officials must use the instructions below to determine the employee's overall summary level. Prior to documenting the summary level determination on the appraisal form, the rating official must share and discuss a draft of the appraisal report and the proposed summary level determination with the employee. The employee must also have an opportunity to comment formally on his/her final appraisal report in *Part 3* below. *(See instructions for additional guidance.)*

**Outstanding:** The majority of elements (critical and non-critical) have been rated at the Outstanding level with the remainder being rated no lower than Excellent. ☐

**Excellent:** The majority of elements (critical and non-critical) have been rated at the Excellent level or above, with the remainder being rated no lower than Fully Successful. Exceptions: (1) When one of two or two of four elements are rated at the Outstanding level and the remainder are rated no lower than Fully Successful, the overall rating would be Excellent; (2) When a majority of elements (critical and non-critical) are rated at the Outstanding level and a remaining non-critical element is rated Unacceptable, the overall summary level is Excellent (this should rarely occur). ☒

**Fully Successful:** All critical elements have been rated at least Fully Successful. Unacceptable on a non-critical element results in an overall summary level of Fully Successful. ☐

**Unacceptable:** One or more critical elements has been rated Unacceptable. ☐

**PART 2 -- RATING OFFICIAL'S APPROVAL OF THE RATING OF RECORD or INTERIM PERFORMANCE RATING**
*(See Type of Appraisal Report in Section I)*

_____     _____
Signature of Rating Official                    Date *(mm-dd-yyyy)*

**PART 3 -- EMPLOYEE COMMENTS** *(Optional).* You may use this section to comment on your performance for this appraisal period. You may also indicate the extent to which your supervisor helped develop your knowledge, skills and abilities.

| Name of Employee | Hunter, Sr., Donald S. | SSN: | 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 |
|---|---|---|---|

### SECTION V - CERTIFICATION OF PROGRESS REVIEW, REQUEST FOR HIGHER LEVEL REVIEW, APPROVAL BY THE REVIEWING OFFICIAL, AND APPRAISAL DISCUSSION

**PART 1 -- PROGRESS REVIEW CERTIFICATION:** The supervisor is required to have at least one progress review during the appraisal period, usually in mid-cycle. This discussion should involve a review of the employee's job elements and performance standards, strengths, weaknesses, performance deficiencies, recommendations for improvement, developmental training and assignments, and supervisory expectations for the remainder of the appraisal period. *(The optional Progress Review form DS-1967 may be used to facilitate discussion, but it does not become part of this appraisal report.)* **Indicate Date(s)** *(mm-dd-yyyy)* **of Progress Review(s) and sign below:**

(1) __11-04-2003__   (2) _____   (3) _____

_____   11-04-2003   _____   11-04-2003
Signature of Rating Official    Date (mm-dd-yyyy)    Signature of Employee    Date (mm-dd-yyyy)

**PART 2 -- EMPLOYEE'S REQUEST FOR A HIGHER LEVEL REVIEW BY THE REVIEWING OFFICIAL:**
I understand that I may request a higher level review of my appraisal report by the reviewing official.

☒ I do    ☒ I do not request a higher level review.

_Donald S Hunter Jr._   6-3-04
Signature of Employee    Date (mm-dd-yyyy)

**PART 3 -- REVIEWING OFFICIAL'S APPROVAL OF RATING OF RECORD or INTERIM PERFORMANCE RATING:** Reviewing official completes this section when the employee opts for a higher level review. Comments are required when the rating is changed or the overall summary rating is unacceptable.

**The Final Summary Level Determination is:**

☐ OUTSTANDING    ☐ EXCELLENT    ☐ FULLY SUCCESSFUL    ☐ UNACCEPTABLE

**REVIEWING OFFICIAL'S COMMENTS** *(Use continuation sheet for additional comments)*:




_____   _____
Signature of Reviewing Official              Date (mm-dd-yyyy)

**PART 4 -- APPRAISAL DISCUSSION:** We acknowledge that an appraisal discussion was held and that the employee has been provided with a copy of his/her appraisal report. The employee's signature on this appraisal report acknowledges receipt of the rating and does not constitute agreement with the rating.

_____   _____   _____   _____
Signature of Rating Official   Date (mm-dd-yyyy)   Signature of Employee   Date (mm-dd-yyyy)

☐ The employee has not signed this appraisal report. This appraisal is being submitted in accordance with 3 FAM 2820, and the employee has received a copy of it.

### SECTION VI -- TECHNICAL REVIEW

A technical review of this rating has been completed in accordance with 3 FAM 2827.3.

_____   _____
Signature of Executive Director/Designate    Date (mm-dd-yyyy)

DS-1966

Page 7 of 7

```
[Code of Federal Regulations]
[Title 5, Volume 1]
[Revised as of January 1, 2002]
From the U.S. Government Printing Office via GPO Access
[CITE: 5CFR330.101]

[Page 196]
```

TITLE 5--ADMINISTRATIVE PERSONNEL

CHAPTER I--OFFICE OF PERSONNEL MANAGEMENT

PART 330--RECRUITMENT, SELECTION, AND PLACEMENT (GENERAL)--Table of Contents

Subpart A--Discretion in Filling Vacancies

Sec. 330.101  Methods of filling vacancies.

An appointing officer may fill a position in the competitive service by any of the methods authorized in this chapter. He shall exercise his discretion in each personnel action solely on the basis of merit and fitness and without the discrimination prohibited in part 713 of this chapter.

[Code of Federal Regulations]
[Title 5, Volume 1]
[Revised as of January 1, 2006]
From the U.S. Government Printing Office via GPO Access
[CITE: 5CFR335.103]

[Page 224-225]

TITLE 5--ADMINISTRATIVE PERSONNEL

CHAPTER I--OFFICE OF PERSONNEL MANAGEMENT

PART 335_PROMOTION AND INTERNAL PLACEMENT--Table of Contents

Subpart A_General Provisions

Sec. 335.103  Agency promotion programs.

    (a) Merit promotion plans. Except as otherwise specifically
authorized by OPM, an agency may make promotions under Sec. 335.102 of
this part only to positions for which the agency has adopted and is
administering a program designed to insure a systematic means of
selection for promotion according to merit. These programs shall conform
to the requirements of this section.
    (b) Merit promotion requirements--(1) Requirement 1. Each agency
must establish procedures for promoting employees which are based on
merit and are available in writing to candidates. Agencies must list
appropriate exceptions, including those required by law or regulation,
as specified in paragraph (c) of this section. Actions under a promotion
plan--whether identification, qualification, evaluation, or selection of
candidates--shall be made without regard to political, religious, or
labor organization affiliation or nonaffiliation, marital status, race,
color, sex, national origin, nondisqualifying physical handicap, or age,
and shall be based solely on job-related criteria.
    (2) Requirement 2. Areas of consideration must be sufficiently broad
to ensure the availability of high quality candidates, taking into
account the nature and level of the positions covered. Agencies must
also ensure that employees within the area of consideration who are
absent for legitimate reason, e.g., on detail, on leave, at training
courses, in the military service, or serving in public international
organizations or on Intergovernmental Personnel Act assignments, receive
appropriate consideration for promotion.
    (3) Requirement 3. To be eligible for promotion or placement,
candidates must meet the minimum qualification standards prescribed by
the Office of Personnel Management (OPM). Methods of evaluation for
promotion and placement, and selection for training which leads to
promotion, must be consistent with instructions in part 300, subpart A,
of this chapter. Due weight shall be given to performance appraisals and
incentive awards.
    (4) Requirement 4. Selection procedures will provide for
management's right to select or not select from among a group of best
qualified candidates. They will also provide for management's right to
select from other appropriate sources, such as reemployment priority
lists, reinstatement, transfer, handicapped, or Veteran Readjustment Act
eligibles or those within reach on an appropriate OPM certificate. In
deciding which source or sources to use, agencies have an obligation to
determine which is most likely to best meet the agency mission
objectives, contribute fresh ideas and new viewpoints, and meet the
agency's affirmative action goals.
    (5) Requirement 5. Administration of the promotion system will

include recordkeeping and the provision of necessary information to employees and the public, ensuring that individuals' rights to privacy are protected. Each agency must maintain a temporary record of each promotion sufficient to allow reconstruction of the promotion action, including documentation on how candidates were rated and ranked. These records may be destroyed after 2 years or after the program has been formally evaluated by OPM (whichever comes first) if the time limit for grievance has lapsed before the anniversary date.

    (c) *Covered personnel actions*--(1) *Competitive actions.* Except as provided in paragraphs (c)(2) and (3) of this section, competitive procedures in agency promotion plans apply to all promotions under Sec. 335.102 of this part and to the following actions:

    (i) Time-limited promotions under Sec. 335.102(f) of this part for more than 120 days to higher graded positions (prior service during the preceding 12 months under noncompetitive time-limited promotions and noncompetitive details to higher graded positions counts toward the 120-day total). A temporary promotion may be made permanent without further competition provided the temporary promotion was originally made under competitive procedures and the fact that might lead to a permanent promotion was made known to all potential candidates;

    (ii) Details for more than 120 days to a higher grade position or to a position with higher promotion potential (prior service during the preceding 12 months under noncompetitive details to higher graded positions and noncompetitive

[[Page 225]]

time-limited promotions counts toward the 120-day total);

    (iii) Selection for training which is part of an authorized training agreement, part of a promotion program, or required before an employee may be considered for a promotion as specified in Sec. 410.302 of this chapter;

    (iv) Reassignment or demotion to a position with more promotion potential than a position previously held on a permanent basis in the competitive service (except as permitted by reduction-in-force regulations);

    (v) Transfer to a position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service; and

    (vi) Reinstatement to a permanent or temporary position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service.

    (2) *Noncompetitive actions.* Competitive procedures do not apply to:

    (i) A promotion resulting from the upgrading of a position without significant change in the duties and responsibilities due to issuance of a new classification standard or the correction of an initial classification error; and

    (ii) A position change permitted by reduction-in-force procedures in part 351 of this chapter.

    (3) *Discretionary actions.* Agencies may at their discretion except the following actions from competitive procedures of this section:

    (i) A promotion without current competition of an employee who was appointed in the competitive from a civil service register, by direct hire, by noncompetitive appointment or noncompetitive conversion, or under competitive promotion procedures for an assignment intended to prepare the employee for the position being filled (the intent must be made a matter of record and career ladders must be documented in the promotion plan);

    (ii) A promotion resulting from an employee's position being classified at a higher grade because of additional duties and

responsibilies;
    (iii) A temporary promotion, or detail to a higher grade position or a position with known promotion potential, of 120 days or less;
    (iv) Promotion to a grade previously held on a permanent basis in the competitive service (or in another merit system with which OPM has an interchange agreement approved under Sec. 6.7 of this chapter) from which an employee was separated or demoted for other than performance or conduct reasons;
    (v) Promotion, reassignment, demotion, transfer, reinstatement, or detail to a position having promotion potential no greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service (or in another merit system with which OPM has an interchange agreement approved under Sec. 6.7 of this chapter) and did not lose because of performance or conduct reasons; and
    (vi) Consideration of a candidate not given proper consideration in a competitive promotion action.
    (vii) Appointments of career SES appointees with competitive service reinstatement eligibility to any position for which they qualify in the competitive service at any grade or salary level, including Senior-Level positions established under 5 CFR Part 319--Employment in Senior-Level and Scientific and Professional positions.
    (d) Grievances. Employees have the right to file a complaint relating to a promotion action. Such complaints shall be resolved under appropriate grievance procedures. The standards for adjudicating complaints are set forth in part 300, subpart A, of this chapter. While the procedures used by an agency to identify and rank qualified candidates may be proper subjects for formal complaints or grievances, nonselection from among a group of properly ranked and certified candidates is not an appropriate basis for a formal complaint or grievance. There is no right of appeal of OPM, but OPM may conduct investigations of substantial violations of OPM requirements.

[59 FR 67121, Dec. 29, 1994, as amended at 63 FR 34258, June 24, 1998]

    Effective Date Note: At 70 FR 72067, Dec. 1, 2005, Sec. 335.**103** was amended by removing the word ``readjustment'' and adding in its place the word ``recruitment'' wherever it appears, effective Jan. 3, 2005.

[[Page 226]]