UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DONALD S. HUNTER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-326 (PLF) |
| | ) | |
| CONDOLEEZZA RICE, Secretary, | ) | |
| United States Department of State, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and LCvR 56.1, Defendant

Condoleezza Rice, Secretary of the United States Department of State ("Defendant"),

respectfully moves for summary judgment on the grounds that Plaintiff cannot make out a *prima*

*facie* case of age discrimination because he did not suffer any adverse action within 180 days of

giving notice of his intention to sue or 45 days of filing an administrative complaint.  Even if he

had suffered an adverse action, Plaintiff cannot establish that Defendant's legitimate, non-

discriminatory reasons for her actions were a pretext for discrimination.  Otherwise, plaintiff has

failed to exhaust his administrative remedies or his complaints are time-barred.

In support of this motion, Defendant respectfully refers the Court to the attached

Statement of Material Facts Not In Genuine Dispute ("DSMF") and to the attached

memorandum of points and authorities.

Because this is a dispositive motion, Defendant has not sought Plaintiff's consent.  See

LCvR 7(m).

Dated: May 11, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


 /s/ 
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


 /s/ 
_____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W - Room E4822.
Washington, D.C.  20530
(202) 514-7161
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONALD S. HUNTER, SR.,                    )
                                          )
                    Plaintiff,            )
                                          )
            v.                            )        Civil Action No. 06-326 (PLF)
                                          )
CONDOLEEZZA RICE, Secretary,              )
United States Department of State,        )
                                          )
                    Defendant.            )
_____       )

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This is not a typical non-selection case. It is a trumped-up story about a GS-12 employee who felt entitled to a promotion when one of his GS-13 level colleagues left, and who had difficulty accepting his supervisor's decision to fill the vacant position with individuals at grades lower than plaintiff's GS-12. This ordinary business decision reflected planning for the future of the organization, and was free of any unlawful bias. If anything, the slight shift in organizational structure effectively advanced plaintiff within his division. Indeed, plaintiff's employment is bereft of anything remarkable or adverse in the relevant time period. There was no decrease in his salary or change in his work in 2004-2005. In fact, approximately four months after he filed this lawsuit, plaintiff was promoted to a GS-13 position in another division.

## I. STATEMENT OF THE CASE

Plaintiff is a long-time employee of the Department of State ("Department") and the former U.S. Information Agency ("USIA"). Having begun his career at USIA as a GS-4 Supply Clerk, he currently works as a GS-13 Grants Specialist in the Grants Division of the Department's Bureau of Administration. He brings this action under the Age Discrimination in

Employment Act, 29 U.S.C. § 633a, challenging the Defendant's failure to promote him noncompetitively to the GS-13 level as he expected and believed he was entitled to when two employees at that level left plaintiff's former division, the Bureau of Educational and Cultural Affairs ("ECA"). Instead, the supervisor of ECA decided to fill these positions as career ladder positions at the GS 9/11/12 level. The key to this case is that plaintiff never applied for, and the Department never advertised or filled, a vacancy for a GS-13 Grants Specialist position in ECA during the relevant time period. Rather, this case springs from plaintiff's disappointment, frustration or sense of entitlement to a particular position to which he had no legitimate right.

Plaintiff previously unsuccessfully challenged his non-promotion to a GS-13 level position in ECA through an accretion of duties in Civil Action No. 04-857 (PLF) as unlawfully discriminatory based on his race and in retaliation for his prior protected EEO activity. Here, plaintiff seeks a second bite at the apple supposedly on the pretense of having only discovered during the deposition of his then-supervisor in Civil Action No. 04-857 (PLF) that she might have engaged in unlawful age discrimination when she decided to replace two employees who departed from the section at the GS-13 level with employees in lower-graded positions. In short, plaintiff heard what he wanted to hear in the following testimony of Fannie Allen in June, 2005:

> Q.    . . . You testified that when Ms. Love and Ms. Swann left the grants division, you posted their positions at the 9/11/12 level; is that correct? Did you testify to that?
>
> A.    Yes. That is correct.
>
> Q.    Why did you post their positions at that level?
>
> A.    It's two-fold. One, I wanted to bring the structure of the office in line with the structure of the department.

And, two, I wanted to bring in some potentially younger candidates,

younger in the sense of career, not necessarily age, giving them the opportunity

and, hopefully, they would stay in the office for a period of time, looking for

longevity.

June 6, 2005 Dep. of Fannie Allen, at 122-23 (attached as Exhibit I to the DSMF).  Although

plaintiff focuses exclusively on the word "younger" in this passage, Ms. Allen's testimony

makes clear that Ms. Allen was not engaged in unlawful discrimination based on age, and the

testimony itself contains her legitimate, non-discriminatory reason for restructuring the division.

Indeed, in responding to a grievance plaintiff filed in 2004, ECA advised plaintiff of these

reasons.  There is absolutely no evidence whatsoever that Ms. Allen's action was based on

plaintiff's (or anyone else's) age.  Even Plaintiff acknowledged in his own deposition that it was

possible that Ms. Allen meant less experienced, rather than strictly younger in age.  See March

26, 2007 Dep. of Donald Hunter at 64 (attached as Exhibit C to DSMF).

Plaintiff has no evidence casting any doubt on the sincerity of Ms. Allen's reasons for

what is quintessentially squarely within management's prerogative, and not really about

plaintiff's career at all.  In fact, plaintiff did not suffer any adverse action within the 180 days

prior to giving notice of his intent to file this lawsuit on January 9, 2006.  Although there is no

dispute that employees under the age of 40 were hired into his division, they were hired at the

same or lower grades than plaintiff.  It is equally undisputed that plaintiff did not apply for the

only vacancy for a Grants Specialist in ECA filled within the six months prior to this lawsuit.

Accordingly, even if Ms. Allen's selections had been based on age – which they were not –

judgment for defendant would still be proper because plaintiff suffered no adverse action.  In

3

fact, throughout the last six months of 2005, plaintiff's job remained unchanged.  He was subsequently promoted to the GS-13 level in another Bureau after he filed this case.  Although plaintiff was perhaps understandably disappointed when Ms. Allen declined to advertise the vacant positions at the GS-13 level, and subsequently hired people at lower grades to staff ECA, his disappointment is neither actionable nor a violation of the ADEA.

## II.  STATEMENT OF FACTS

Defendant adopts and incorporates here the Defendant's Statement of Material Facts Not In Genuine Dispute appended hereto.

## III.  ARGUMENT

Plaintiff's age discrimination claim fails for several reasons.  First, plaintiff did not suffer any adverse action within the six months prior to giving notice in January, 2006 that he intended to bring this action.   Defendant's decision to restructure its workforce simply did not alter the terms and conditions of plaintiff's employment.  Second, even if plaintiff could identify a timely adverse action, Ms. Allen's decision is entitled to a presumption of non-discrimination—the "same actor" inference—because she is the same person who, in 1997, accepted the transfer of Plaintiff's FTE into her division; who, in 1999, recommended Plaintiff for an accretion-of-duties promotion to GS-12; and who, throughout Plaintiff's tenure in the Grants Division, took a variety of concrete steps to provide awards to plaintiff and to promote his professional development.  Based on the evidence, Plaintiff cannot possibly establish that Ms. Allen's legitimate, non-discriminatory reason for advertising positions at a lower level than they had previously been occupied was a pretext for age discrimination.  Employers remain free to make such decisions in the best interests of their organizations.

4

A.    **Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

"shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Alexis v. District of Columbia, 44 F. Supp. 2d 331, 337 (D.D.C. 1999); Celotex Corp., 477 U.S. at 323.  When the moving party has carried its burden, the responsibility shifts to the nonmoving party to show that there is, in fact, a genuine issue of material fact for trial.  Alexis, 44 F. Supp. 2d at 337.  The opposing party must provide "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail."  Id.  The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322; see also Alexis, 44 F. Supp. 2d at 337 ("Rule 56(c) *mandates* summary judgment" in this circumstance) (emphasis added).

5

**B.**    **Deference Due to Employer's Business Decisions**

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases. Though Plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions. "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

**C.**    **Administrative Procedures and Exhaustion Requirements**

Federal employees may file a civil action concerning employment discrimination only after exhausting their administrative remedies before the concerned Federal agency for each discrete alleged discriminatory act. 42 U.S.C. § 2000e-16(c); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108 (2002). Under rulemaking authority delegated by Title VII, see 42 U.S.C. § 2000e-16(b), the EEOC has "established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).

Under the ADEA, a federal employee who believes that he or she has been the victim of age discrimination has available two alternative avenues of exhaustion.  See 29 U.S.C. § 633a; Stevens v. Dep't of Treasury, 500 U.S. 1 (1991).  First, the employee may pursue an administrative remedy and then, if unsatisfied, he may bring a civil action.  29 U.S.C. § 633a(b). Under this option, as with other kinds of discrimination claims, the employee must file an administrative complaint within 45 days of the alleged unlawful action, i.e., the employee must bring the complaint to the attention of an EEO counselor.  See 29 C.F.R. § 1614.105. Alternatively, the aggrieved employee may seek a remedy in federal district court in the first instance, provided (i) that the employee gives the Equal Employment Opportunity Commission ("EEOC") not less than 30 days' notice of intent to file such a civil action and (ii) that such notice is filed within 180 days after the alleged unlawful act occurred.  29 U.S.C. § 633a(c); see also Thorne v. Cavazos, 744 F. Supp. 348, 350 (D.D.C. 1990).  Proper exhaustion by one method or the other is required.  Rann v. Chao, 346 F.3d 192, 199 (D.C. Cir. 2003), cert. denied, 543 U.S. 809 (2004) (discussing the two methods of exhausting age claims and affirming dismissal of suit brought under ADEA for failure to exhaust administrative remedies).

Here, plaintiff pursued both avenues.  Plaintiff notified the Equal Employment Opportunity Commission by letter dated January 9, 2006 that he intended to proceed into federal court on a complaint of age discrimination.  See DSMF ¶ 63 & Exhibit D.  Accordingly, under this method of exhaustion, plaintiff must identify actions that occurred between July 14, 2005 and January 9, 2006 because compliance with the administrative procedures and time lines is mandatory:   "[c]omplainants must timely exhaust these administrative remedies before bringing their claims to court."  Bowden, 106 F.3d at 437; see also Park v. Howard University, 71 F.3d

904, 907 (D.C. Cir. 1995)(holding that a plaintiff must exhaust applicable administrative

remedies and that a plaintiff cannot raise new allegations or charges in court that were not

brought in the prior administrative proceedings).[1]

     As the U.S. Supreme Court emphasized in National R.R. Passsenger Corp. v. Morgan,

536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the

legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. at 108

(quoting Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980)). In Morgan, the U.S. Supreme

Court expressly rejected the "continuing violation" theory, which some circuits, including the

---

[1] Plaintiff also filed an administrative complaint on August 25, 2005, alleging that certain actions were discriminatory. See Complaint, ¶ 3 (identifying exclusively the age prong of the administrative claim as a basis for exhausting his administrative remedies); DSMF ¶¶ 61-62. Plaintiff's August 25, 2005 administrative complaint identified the following actions: (1) the decision to "downgrade Ms. Phyllis Swann GS-13 Grants Specialist position . . . to GS 9/11/12; (2) the hiring of Kenyetta Gunther in August 22, 2005; (3) the absence in August, 2005 of plaintiff's 2004 performance rating and 2005 written performance plan; (4) plaintiff's supervisor querying him regarding a report she had received that plaintiff had been sleeping during a staff meeting on August 17, 2005; and (5) an accusation by a colleague during a staff meeting on August 23, 2005 that plaintiff made "most of the mistakes in the office Grants Management Financial Information System." The first two are dealt with elsewhere in this memorandum. Plaintiff did not include the remainder of the list in the allegations in the Complaint filed in this Court. Accordingly, the Court should deem plaintiff to have abandoned them. See Fed. R. Civ. P. 8(a). Even if plaintiff had raised the last three allegations, however, defendant's motion should still be granted because none of them rises to the level of adverse actions. See Ware v. Billington, 344 F. Supp.2d 63, 71 (D.D.C. 2004) (". . .actions imposing purely subjective harms, such as dissatisfaction or humiliation, are not adverse."). The last two fall squarely within the sort of workplace sleights not covered by the employment discrimination laws. Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001); Brodetski v. Duffy, 141 F.Supp.2d 35, 44 (D.D.C. 2001); Holcomb v. Powell, 433 F.3d 899, 902 (D.C. Cir. 2006). Moreover, the Court should draw the reasonable inference from plaintiff's promotion to the GS-13 Grants Specialist position in the Bureau of Administration in June, 2006 that either his paperwork was complete by the time he applied or that its absence in no way hindered his promotion. See Childers v. Slater, 44 F. Supp. 2d 8, 19 (D.D.C. 1999) ([C]onduct that sporadically wounds or offends but does not hinder an employee's performance does not rise to the level of adverse action."), modified in part on other grounds, 197 F.R.D. 185 (D.D.C. 2000).

D.C. Circuit, see Palmer v. Kelly, 17 F.3d 1490, 1495 (D.C. Cir. 1994), previously had

employed to allow claimants to litigate untimely discrimination claims if those claims were

sufficiently related to timely ones.  536 U.S. at 105.  The Supreme Court specifically held that:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they
> are related to acts alleged in timely filed charges.  Each discrete discriminatory
> act starts a new clock for filing charges alleging that act.  The charge, therefore,
> must be filed within the [applicable] time period after the discrete act occurred.

Id. at 2072.  The Court described "discrete acts" as including acts "such as termination, failure to

promote, denial of transfer, or refusal to hire."  Id.

### D.    Plaintiff Cannot Make Out a *Prima Facie* Case Because He Did Not Suffer an Adverse Action In the 180 Days Prior to Giving Notice of His Intent to Sue Or When Ms. Allen Decided to Restructure the ECA

Notably, in addressing a disparate treatment claim under the ADEA, the Supreme Court

has noted that "Congress' promulgation of the ADEA was prompted by its concern that older

workers were being deprived employment on the basis of inaccurate and stigmatizing

stereotypes."  See Hazen Paper Company v. Biggens, 507 U.S. 604, 610 (1993).  Clearly,

plaintiff has been denied neither employment nor multiple promotions; indeed, his progress from

GS-4 through GS-13 level is remarkable.  See DSMF ¶¶ 1-17, 29-30, 34.  To establish a prima

facie case of age discrimination under the ADEA, a plaintiff "must demonstrate facts sufficient

to create a reasonable inference that age discrimination was a 'determining factor' in the

employment decision."  See Hayman v. National Academy of Sciences, 23 F.3d 535, 537 (D.C.

Cir. 1994), citing Cuddy v. Carmen, 694 F.2d 853, 856-57 (D.C. Cir. 1982).[2]  A plaintiff can

---

[2]  Although plaintiff might have intended at some point to include a claim of retaliation in
this Civil Action (No. 06-326 (PLF)), he conceded at his deposition that he failed to do so and
only cited the law prohibiting unlawful retaliation in a generic opening paragraph.  See March
26, 2007 Dep. of Donald Hunter at 101-03. (Exhibit C)  Accordingly, this case does not include

create such an inference by showing that: (1) he is a member of the statutorily protected age group (over age forty); (2) he was subjected to an adverse employment action (such as non-promotion); and (3) there exists some causal connection between the adverse action and plaintiff's age.  See Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003); Stella v. Mineta, 284 F.3d 135, 144-46 (D.C. Cir. 2002) (although plaintiffs need not show that a person from outside of their protected class was favored, some evidence is required of a connection between the plaintiff's status and the allegedly discriminatory action).

To establish an adverse employment action in the absence of a diminution in pay or benefits, a plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment."  Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999).[3]  The employment decision must inflict "objectively tangible harm."  See Holcomb v.

---

any retaliation claim.  See Fed. R. Civ. P. 8(a).  Even so, plaintiff fails to allege and cannot show that he ever exhausted a retaliation claim separate and apart from those already disposed of in Civil Action No. 04-857 (PLF).  See Morgan, 536 U.S. at 108-09 (requiring all discrete acts of retaliation to be exhausted).  Nothing in the ADEA creates any fast-track to district court for retaliation claims.  But even if the Court were to belatedly allow plaintiff to present such an unexhausted claim, the absence of an adverse action would doom it just as it does for plaintiff's age discrimination claim.  Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006) (in the context of retaliation, in lieu of a traditional adverse action, plaintiff may rely on conduct which might deter a reasonable worker from making a complaint of discrimination); see also Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414-15 (2006) ("We agree with the formulation set forth by the . . . District of Columbia Circuit[] [in Rochon].").  Hiring new people into the division at a lower or the same grade is not the sort of thing that would deter a reasonable person from complaining about discrimination, and it obviously did not deter plaintiff in this case because he filed this action.

[3]  The concept is similar to that of the "tangible employment action," which requires a showing of a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Brown v. Brody, 199 F.3d at 456 (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Powell, 433 F.3d 889, 902 (D.C. Cir. 2006); see also Russell v. Principi, 257 F.3d 815, 818 (D.C.

Cir. 2001) (recognizing that this requirement "guards against both judicial micromanagement of

business practices, and frivolous suits over insignificant slights") (internal quotation omitted).

"An employment decision does not rise to the level of an actionable adverse action . . . unless

there is a tangible change in the duties or working conditions constituting a material employment

disadvantage." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002); see also Russell, 257

F.3d at 818 ("not everything that makes an employee unhappy is an actionable adverse action.").

    In this case, plaintiff identifies the adverse action as the agency's failure to promote him

to the GS-13 level when Ms. Love and Ms. Swann left ECA.  Ms. Love retired in January, 2004.

Although plaintiff requested to be promoted into a GS-13 position in February, 2004, and

believed he should be placed in the job without competition, he ultimately filed a union

grievance, but no EEO complaint, when the agency did not respond favorably.  See DSMF ¶ 43.[4]

In the course of responding to plaintiff's grievance, the Department made it clear that it was

denying his request.  Because these events are well outside the 180 day window before plaintiff

gave notice of his intention to sue for age discrimination by letter dated January 9, 2006, he is

time-barred on any claim relating to his February, 2004 request for a non-competitive promotion

to what plaintiff perceived was Ms. Love's GS-13 position.

    When Ms. Swann left ECA in May 2005, plaintiff concedes that he did not request to be

promoted to the GS-13 level at that time.  See DSMF ¶ 49.  Accordingly, the Department of

State did not take any action, adverse or otherwise, against Mr. Hunter within the six months

---

    [4] Plaintiff's failure to file an administrative EEO complaint within 45 days or to give
notice of his intent to file an age discrimination action within 180 days of his employer's
rejection of his request for a promotion bars any claim.

prior to his giving notice of an alleged violation of the ADEA, and plaintiff's claim fails as a matter of law.  See Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1152 (D.C. Cir. 2004); cf. Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 654 (D.C. Cir. 2003) (finding no retaliatory animus where person selected repeatedly indicated interest and plaintiff's expression of interest in a job was stale). So the fact that ECA subsequently hired Ms. Thompson and Ms. Gunther, both of whom were under the age of 40, at the GS-9 level is simply irrelevant.  See DSMF ¶¶ 50-51.  Plaintiff's employment was not negatively impacted by their hiring into positions plaintiff did not seek.

Even putting the hiring aside, plaintiff still cannot identify an adverse action.  Ms. Allen's decision to fill the GS-13 positions vacated by Ms. Love and Ms. Swann with individuals at grades lower than plaintiff's is not adverse to plaintiff.  In Forkkio v. Powell, 306 F.3d 1127 (D.C. Cir. 2002), the D.C. Circuit held that a reorganization that did not affect plaintiff's pay or benefits, and which did not reduce his responsibilities did not amount to an adverse action.  Id. at 1131.  Likewise, in this case, the terms, conditions, and privileges of plaintiff's employment were unaffected by the Department's decision to fill two GS-13 positions at lower-grade levels.  Plaintiff's claim amounts to one of disappointed expectation, rather than any adverse action.  That is not actionable.  Broderick v. Donaldson, 437 F.3d 1226, 1232-34 (D.C. Cir. 2006) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition).  Because Plaintiff was not entitled to a non-competitive promotion to GS-13, but only relies on his subjective and unilateral expectation that he should have received a non-competitive promotion, its failure to materialize as he would like does not constitute an adverse action.  See, e.g., Russ v. Van Scoyoc Associates, Inc., 122

12

F.Supp.2d 29, 33 (D.D.C. 2000) (loss of bonus is not adverse employment action if Plaintiff had

only a subjective expectation that she would receive bonus); See also Rabinovitz v. Pena, 89

F.3d 482, 488-89 (7th Cir. 1996) (holding that "loss of a bonus is not an adverse employment

action ... where employee is not automatically entitled to the bonus").[5]  In short, because plaintiff

was not entitled to and had not applied for an advertised vacancy which presented an opportunity

for promotion, his claim must fail.

Defendant's decision to restructure the division plaintiff worked in is akin to the sort of

"interlocutory or intermediate decision having no immediate impact on employment decisions."

Taylor v. FDIC, 132 F.3d 753, 764 (D.C. Cir. 1997).  Indeed, the decision had no discernible

impact on plaintiff whatsoever, other than to disturb his sincerely held belief that he should be

promoted without competition.  See March 26, 2007 Dep. of Donald Hunter at 12-13 (Exhibit

C).  But the decision to hire employees into positions at grades lower than plaintiff's certainly

did not impact upon plaintiff's salary, benefits, day-to-day job responsibilities or any other terms

and conditions of his employment.  The decision did not result in any material adverse

consequences for plaintiff, see Brown, 193 F.3d at 457, nor did it undermine his ability to

perform his job satisfactorily or threaten his prospects of future employment.  See Crenshaw v.

---

[5]  In Russell v. Principi, the D.C. Circuit reversed a grant of summary judgment by the district court, holding that the denial of a bonus can in some circumstances constitute an adverse employment action.  257 F.3d 815, 817 (D.C. Cir. 2001).  The Court of Appeals, relying on its Brown v. Brody precedent, made clear that the determination turns on whether the action "'affect[s] the terms, conditions, or privileges of [an employee's] employment or future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.'" Id. at 818-19 (quoting Brown v. Brody, 199 F.3d at 457)). The facts in Russell are readily distinguishable from those in this case because plaintiff's purely subjective sense of entitlement to a promotion is not the sort of "tangible, quantifiable award" having a "more direct, measurable, and immediate effect" on his employment like the bonus at issue in Russell.

Georgetown Univ., 23 F. Supp.2d 11, 17 (D.D.C. 1998).  Courts have declined to find an

"adverse" decision when presented with far more tangible actions.  See, e.g., Boone v. Goldin,

178 F.3d 253, 256 (4th Cir. 1999) (re-assignment not a materially adverse action absent

significant detrimental effect); Hastie v. Henderson, 121 F. Supp. 2d 72, 82 (D.D.C. 2000)

(lateral transfer not actionable); Forkkio, 306 F.3d at 1131 (affirming that reversion of temporary

GS-15 post back to a permanent GS-14 post was not an actionable adverse action).

In sum, the decision about advertising and filling two vacant former GS-13 positions as

career ladder positions at the GS 9/11/12 levels does not constitute an "adverse employment

decision" that is actionable under the ADEA.  Therefore, plaintiff's claim should be dismissed as

a matter of law.

### E.     Tolling is Not Allowed Based On the Law or Facts

Plaintiff asserts that he was unaware of the role unlawful age discrimination supposedly

played in Ms. Allen's decision for restructuring ECA until she testified in her deposition in June,

2005, in connection with Civil Action No. 04-857 (PLF).  Ms. Allen explained both within the

context of that testimony as well as in discovery during the instant case, that her motivation was

not to attract younger, but rather less experienced, grants specialists to the ECA to enhance the

entity's long-term ability to accomplish its mission.  See DSMF ¶ 55.  That does not amount to

age discrimination, but even if it could, it would not be against plaintiff because he was already

working and suffered no change in pay, benefit, duties, or anything else.[6]

---

[6] In this sense, plaintiff lacks standing to sue.  Cf. Melendez v. Illinois Bell Telephone
Co., 79 F.3d 661, 668 (7th Cir.1997) (plaintiff lacked standing to sue under Title VII disparate
impact theory where there was no evidence his injury was caused by discriminatory employment
practice).

Plaintiff may not reach back to the time in 2004 when Ms. Allen made this decision to challenge it now.  Plaintiff's allegation amounts to a plea for equitable tolling. Although the exhaustion requirement may be subject to equitable tolling, "the plaintiff bears the burden of pleading and proving facts supporting equitable avoidance" of the exhaustion requirement. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).  Moreover, the "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances."  Washington v. WMATA, 160 F.3d 750, 753 (D.C. Cir. 1998).  See also Morgan, 536 U.S. at 113-14 (equitable doctrines such as tolling "are to be applied sparingly" and not "'out of a vague sympathy for particular litigants.'") (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam)).

As this Court has found before, equitable tolling will not apply when an employee does not initiate an administrative complaint even though the employee has a "reasonable suspicion" that he or she suffered an adverse employment action.  See McCants v. Glickman, 180 F. Supp. 2d 35, 40-41 (D.D.C. 2001); accord Blackmon-Malloy v. U.S. Capitol Police, 338 F. Supp. 2d 97, 111 (D.D.C. 2004) (citing McCants for reasonable suspicion standard).  Plaintiff cannot satisfy this "reasonable suspicion" standard because he noted himself that he knew at the time Julie Johnson was hired in 2004 for the advertised GS 11/12 position that Ms. Johnson was under 40 years of age.  See DSMF ¶ 42.  Moreover, plaintiff admitted candidly during his deposition that he suspected as early as 2002 that he was the victim of discrimination based on his age.  DSMF ¶ 58.  Holding out for "direct proof" is clearly inconsistent with exercising the required due diligence.  Cf. McCants, 180 F. Supp. 2d at 39-40 (rejecting employee's argument "that he did not acquire 'tangible information' of the discrimination" until later).  Accordingly,

plaintiff may not challenge Ms. Allen's decision in 2004 to fill the former Love GS-13 level position at lower grades.

### F.    Plaintiff Cannot Show Pretext

Because plaintiff cannot establish that he suffered any adverse action, there is no need for the Court to reach the burden-shifting analysis culminating in pretext.  But, in the alternative and only if the Court were to find that plaintiff has established a *prima facie* case of age discrimination, the burden would then shift to the agency to articulate a legitimate, non-discriminatory reason for its actions.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Harding v. Gray, 9 F.3d 150, 152 (D.C. Cir. 1993).  Notably, the agency is not required to prove that it made the wisest choice, but only to articulate reasons for the decision that were non-discriminatory.  See Davis v. State University of New York, 802 F.2d 638, 641 (2d Cir. 1986) (citing Burdine, 450 U.S. at 258-59).  In fact, the defendant "need not prove that the tendered reason actually motivated her behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); accord St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) (holding that a complainant "at all times bears the ultimate burden of persuasion") (internal quotation marks and citations omitted).  Moreover, "the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment."  St. Mary's Honor Center, 509 U.S. at 509.

### 1. Defendant Has Articulated Legitimate, Non-Discriminatory Reasons for Her Decisions

Ms. Allen has provided evidence that she consulted with the Human Resources division regarding her options when Ms. Love retired in 2004. DSMF ¶ 55. Once she learned that she was not required to fill Ms. Love's former position at the GS-13 level and could consider the overall structure of the workforce to accomplish the division's mission, she decided to look to the future and fill a career ladder position at the GS-9/11/12. Her hope was to attract employeesto ECA who would learn the Grants Specialist position and remain with the organization while their careers progressed. See DSMF ¶ 55. After that, Ms. Allen selected one person, Julie Johnson, in 2004, for a Grants Specialist position, and two people, Kenyetta Gunther and Deborah Thompson in 2005 for positions at or significantly below plaintiff's GS-12 level. See DSMF ¶¶ 40, 45, 50.

In paragraph 13 of the Complaint, plaintiff alleges that in February, 2006 he was denied an opportunity to compete for a GS-14 Supervisory Budget Analyst position. The opportunity to compete for the GS-14 is dependent on the notion that plaintiff should have been promoted to the GS-13 earlier, and plaintiff acknowledges that he was not eligible for the GS-14 position because he lacked sufficient time in the GS-13 level. This claim is highly similar to the one the Court addressed in Civil Action No. 04-857. See March 26, 2007 Opinion [Docket Entry No. 37 in C.A. 04-857 (PLF)] at 16. Plaintiff testified in his deposition that he inquired whether the Supervisory Budget Analyst position could be advertised at the GS 13/14 level and was told that it could not. See March 26, 2007 Dep. of Donald Hunter at 57 (Exhibit C). As a result, plaintiff did not apply. Id. at 58. As a result, he was not available for selection and did not suffer an adverse action. See Ware v. Billington, 344 F.Supp.2d at 71 n.1 (rejecting employee's attempt to

17

end-run around the absence of an adverse action by claiming that employer had an "overall scheme" to deny him a position and "destroy his career").

These reasons are, by definition, non-discriminatory. Thus, Defendant has carried her burden of production.

### 2.    Plaintiff Cannot Show that Defendant's Legitimate Non-Discriminatory Reasons Were A Pretext for Age Discrimination

Once the defendant has carried the burden of production, the McDonnell Douglas framework is no longer relevant, and "the presumption raised by the prima facie case is rebutted' and 'drops from the case.'" St. Mary's Honor Center, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 255 & n.10) (internal citations omitted). The burden then shifts back to the plaintiff to establish that the defendant's legitimate, non-discriminatory reasons were not its true reasons but rather were pretextual. See McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973); Burdine, 450 U.S. at 252-53. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center, 509 U.S. at 515 (emphasis in original). "It is not enough, in other words, to disbelieve the employer, the factfinder must believe the plaintiff's explanation of intentional discrimination." Id. at 519. Plaintiff bears the ultimate burden of persuasion on the issue of whether he was intentionally discriminated against. Burdine, 450 U.S. at 253.

Even if a Court suspects that a plaintiff was victimized by an inaccurate consideration of his qualifications, "it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir 1977)). See also Winston v. Smithsonian Science Info. Exch., Inc., 437 F. Supp. 456, 473

(D.D.C. 1977) ("It is axiomatic that under the statutory scheme of Title VII . . . an employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as racial or other discriminatory distinctions do not influence the decision."), aff'd, 595 F.2d 888 (D.C. Cir. 1979). "Once the employer has articulated a nondiscriminatory reason for its actions . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reason it offers." Fischbach, 86 F.3d at 1183 (internal quotation marks and citations omitted). "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." Pignato v. American Trans Air, 14 F.3d 342, 349 (7th Cir. 1994), quoted in Fischbach, 86 F.3d at 1183.

Further, "[t]o avoid summary judgment, the plaintiff [is] required to produce some objective evidence showing defendant's proffered reasons are mere pretext." Batson v. Powell, 912 F. Supp. 565, 578 (D.D.C. 1996) (emphasis added), aff'd, 203 F.3d 51 (D.C. Cir. 1997). Nor may a plaintiff create a factual issue of pretext merely on personal speculation of discriminatory or retaliatory intent. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) ("a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment." ) (quoting Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1999); see also Settle v. Baltimore County, 34 F. Supp.2d 969, 976 (D. Md. 1999) (citing Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) ("[r]ecent cases of the Supreme Court have made increasingly clear, however, the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial") (citations omitted)); Phillips v. Holladay Property Servs., Inc., 937 F. Supp. 32, 35 n.2 (D.D.C. 1996), aff'd, 1997

19

WL 411695 (D.C. Cir. 1997) ("[A] plaintiff's denial of defendant's articulated legitimate reason without producing substantiation for the denial is insufficient to withstand a motion for summary judgment.").

In the case at bar, plaintiff's attempt to show pretext as to Ms. Allen's reasons for filling Grant Specialist positions in ECA at the GS 9/11/12 level in 2004 and 2005 boils down to his observation that the individuals who were hired for these two positions were under 40. Plaintiff lacks standing to challenge those decisions because he did not apply for them; he simply felt entitled to be placed without competition into the GS-13 Grants Specialist position. Indeed, when confronted in deposition with Ms. Allen's explanation for her decision, plaintiff testified that Ms. Allen has hired people under the age of 40. See March 26, 2007 Dep. of Donald Hunter at 106-07 (Exhibit C). But plaintiff also acknowledged during his deposition that Ms. Allen has hired and promoted people, including plaintiff, over the age of 40. See id. at 68-71; DSMF ¶¶ 1, 17. A record of hiring and promoting people both inside and outside the protected class for purposes of age is not indicative of any unlawful age bias.

The only other evidence plaintiff has identified are Ms. Allen's past statements to him (not unlike that in her deposition) that she wanted to hire "younger" people and his belief that once Ms. Allen had not hired the best qualified candidate for a particular position. Neither of these assertions amounts to admissible evidence capable of creating a genuine issue of fact.[7] See

_____

[7] Plaintiff's reliance on unspecified statements by Ms. Allen about wanting to hire "younger" employees is not reflective of age bias against applicants over 40. Without context, such vague statements are impossible to evaluate; moreover, Ms. Allen's deposition testimony makes clear that she means younger in the sense of career development, rather than age. Plaintiff's subjective opinion about the relative qualifications of applicants for a position is also not probative of any unlawful age discrimination.

20

Ware, 344 F.Supp.2d at 73 n.3 (court need not address plaintiff's "quibble about the candidates'

relative qualifications" because discrimination can be inferred only where there is a showing that

the non-selected person's are far superior to the selectee's).

But also weighing heavily against any finding of pretext is the fact that it was Ms. Allen

who both accepted Plaintiff into her Grants Division in 1997 (see DSMF ¶ 17) when he was 39

years old (DSMF ¶ 1), and recommended him for an accretion-of-duties promotion to GS-12 in

1999 (id. at ¶ 27) when he was 41 years old (DSMF ¶ 1) —as well as taking a number of

concrete steps throughout his tenure in the Grants Division to promote his professional

development, increase is signing authority, and give him awards.  See DSMF ¶¶ 23-26, 31, 33.

See Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 12 (D.D.C. 2000), aff'd, 298 F.3d

989 (D.C. Cir. 2002) ("the Court finds persuasive the fact that the same group of management

officials who fired plaintiff also hired her only a short time before, thereby raising a presumption

or inference of non-discrimination.") (citing cases).  See also Buhrmaster v. Overnite Transp.

Co., 61 F.3d 461, 464 (6th Cir.1995), cert. denied, 516 U.S. 1078 (1996) ("An individual who is

willing to hire and promote a person of a certain class is unlikely to fire them simply because

they are a member of that class.  This general principle applies regardless of whether the class is

age, race, sex, or some other protected classification.").

In sum, in light of the overwhelming evidence supporting the honesty of Ms. Allen's

reasons for her decisions, and the complete dearth of competent evidence to call those reasons

into genuine question, Plaintiff clearly cannot establish pretext.  For this reason as well, even if

the Court were to find that plaintiff had suffered any adverse action and could make out a prima

facie case of age discrimination, Defendant is entitled to summary judgment.

### III.  CONCLUSION

_____Based upon the foregoing, Defendant respectfully requests that the Court grant her

judgment on Plaintiff's age discrimination claims and dismiss his complaint with prejudice.

Dated: May 9, 2007.

Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_/s/_____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W - Room E4822.
Washington, D.C.  20530
(202) 514-7161
(202) 514-8780 (facsimile)

22