UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DONALD S. HUNTER, SR.,           )
                                  )
       PLAINTIFF,            )
                                  )
v.                                    )
                                  )
CONDOLEEZA RICE, Secretary,   )
Department of State,             )     Civil Action No.: 06-326 (PLF)
                                  )
       DEFENDANT.        )
_____)

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant is correct about one thing: this is not a typical non-selection case.  In this case, the Defendant, by and through Ms. Fannie Allen, eliminated two entire funded vacant positions, so as not to promote Plaintiff into the GS-13 Grants Specialist position.  *See* Exhibit 6.  Furthermore, her decision to post the decision at GS 9/11/12 was made just three weeks after Plaintiff requested promotion into the vacant GS-13 position. *See* Exhibit 7.  The Defendant confirmed this fact when it rightly pointed out that Mr. Hunter was "effectively advanced" within  the division; he was the only graded GS-12 Grants Specialist and most qualified individual for the vacant position that was organizationally eliminated.  Furthermore, Plaintiff had previously requested promotion to the GS-13 level, but was denied by Ms. Allen.  That effort prompted Mr. Ben Castro to issue a letter that indicated: 1) he would be considered for next available GS-13 position vacancy; and 2) he would be given GS-13 level assignments to demonstrate ability to perform at higher graded level. *See* Exhibit 5.  As it turned out, he did not receive any work assignments at

the GS-13 level and the next available vacancies at that level were secretly downgraded without any process[1].

<u>STATEMENT OF DISPUTED AND UNDISPUTED FACTS</u>

Plaintiff incorporates by reference the "Statement of Material Facts Not in Genuine Dispute" appended to the Defendant's Motion.  These material facts which are not in dispute are not adequate or sufficient to allow a fact finder to decide in the Defendant's favor.  Plaintiff disputes the following facts:

1.  In paragraph 9 of the Defendant's statement of undisputed facts, *See* Motion, p.3., the Defendant states that Plaintiff resigned from his auditor position in November 1993.  Plaintiff states that he did not resign, but was removed pursuant to the notice of proposed removal cited by the Defendant.

2.  In paragraph 22 of the Defendant's statement of undisputed facts, *See* Motion, p.6., the Defendant states that as team leaders, Ms. Stinson and Ms. Ahern provided guidance and supervision to team members.  Plaintiff states that team leaders did supervise, but did not provide guidance on work assignments.

Plaintiff has not been allowed his full and fair opportunity to pierce the actual reasons and motivations behind his non-selection and related adverse actions.  It is well settled that the judge's function is not to weigh the lack of material disputed facts or evidence with the purpose of determining the truth of any facts regarding any dispositive legal matter.  Such material and undisputed evidence will thus always and only be determined

---

[1] The Agency attempts to argue that Plaintiff's promotion to the GS-13 level, after the instant complaint was filed, is further evidence that no discrimination occurred.  However, Plaintiff specifically testified that he obtained the promotion outside of ECA on his own accord and that Ms. Allen attempted to prevent the transfer, further evidencing her bias against Plaintiff. *See* Hunter's Deposition attached as Exhibit 2, p.41-43.

at the conclusion of any litigation by the minds of a reasonable jury, and only if such jurors could reasonably return a verdict on the evidence. *Id.*, *Anderson, 477 U.S. at 248.*

<u>APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has emphasized that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). To prevail on a Rule 56 Motion for Summary Judgment, the Defendant must demonstrate 1) that there is no genuine issue as to any material fact; and 2) it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court must determine the facts of each case bearing in mind that the non-moving party is entitled ". . . to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, and the most favorable of possible alternative references from it drawn in his behalf." *Ross v. Communications Satellite Corp*., 759 F.2d 355, 364 (4th Cir. 1985). In determining whether there is a genuine issue of material facts, the court views the facts, and all reasonable inferences drawn from them, in the light most favorable to the party opposing summary judgment. *Anderson*, 477 U.S. at 248.

Although the standards for awarding summary judgment apply equally in discrimination cases, the courts note that in evaluating a motion for summary judgment in

employment discrimination cases, it should be careful when considering such a remedy. "Summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense, (and) courts must take special care in cases such as the instant one because motive often is the critical issue in employment discrimination cases." *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir. 1987).

## I.    SUMMARY JUDGMENT IS UNCONSTITUTIONAL WHEN APPLIED TO THE INSTANT CASE

Rule 38, Fed. R. Civ. Proc. should be upheld as sacrosanct in federal jurisprudence. It provides:

> (a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

Rule 39, FRCP, further provides:

> (a) By Jury.
> When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States. Summary judgment unfairly denies the Plaintiff a federal right to have his or her claims be presented for trial.

Rule 56(c), Fed. R. Civ. Proc., provides that summary judgment can only be granted once the movant proves:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus a simple evidentiary showing that a Defendant cannot establish that there are no genuine issues as to any material facts wholly precludes relief to Defendant under Rule 56. Any court that would still grant a movant such relief despite its failure to show that no genuine and material facts are in dispute misreads the plain intent of Rule 56, and improperly violates the 7th Amendment to the United States Constitution, the  Federal Rules 38-39, and American federal jurisprudence.

The Supreme Court has never decided the issue of the constitutionality of summary judgment.  In *Fidelity & Deposit Co. v. U.S.*, 187 U.S. 315 (1902), the High Court only accepted as constitutional a procedure more akin to a Rule 12(b)(6) motion to dismiss or demurrer than one for a motion for summary judgment..  The defendant in that case accepted the facts as alleged by the non-moving party. In a summary judgment motion under Rule 56, the moving party is not required to accept, as true, that facts of the non-moving party.  The Supreme Court never decided the issue of the constitutionality of summary judgment as applied to employment discrimination claims, and there are good reasons to presently believe it would declare the procedure unconstitutional as applied to such claims.  The basis for summary judgment is rooted in the 7th Amendment, which provides in relevant part: "[in] suits at common law, the right of jury trial will be preserved and…than according to rules of the common law."  U.S. Const. Amend. VII. This right is prescribed by Rule 38(a). *See also,* Suja A. Thomas, Why Summary Judgment is Unconstitutional, Virginia Law Review, Vol. 93 2007, p.8; *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996); *Gasoline Products v. Champlin Retaining Co.,* 283 U.S. 494 (1931)*; Slocum v. NY Life Ins. Co.*, 228 U.S. 364, 377 (1913).  The 7th Amendment requires that the substance of the common law must be maintained. The

Supreme Court, nonetheless, has never defined what constituted the substance of English common law in 1791. Since 1791, federal courts have upheld every procedure that removes cases from the actual trier of fact, the jury, before, during and after the trial, which thus includes Rule 56. However, applications of Rule 56 is in conflict with the substance of the English common law. *See* Suja A. Thomas, Why Summary Judgment is Unconstitutional, Virginia Law Review, Vol. 93 2007, p. 8, *citing, The Seventh Amendment, Modern Procedure and the English Common Law*, 82 WASH. U. L.Q. 687, 695-701 (2004) (S. Thomas).

At English common law, the defendant must admit "every fact, and every conclusion, which the evidence given for the Plaintiff conduced to prove."), non suit, special case, and new trials.  By looking at these common law procedures, there are 3 core principles that persist: 1) the jury, or the parties, not the court, determined the facts; one party could admit the allegations or conclusions of evidence of the other party and leave the final determination to the jury; 2) the court only determined whether the evidence was sufficient to support a jury verdict <u>after the parties presented evidence at trial and the jury rendered a verdict</u>; and 3) a jury would decide the case with any evidence, however improbable, unless the moving party admitted the facts and conclusions of the non-moving party, including improbable facts and conclusions. *See* Suja A. Thomas, *Why Summary Judgment is Unconstitutional*, Virginia Law Review, Vol. 93 2007, p. 9-12. *See also* James Oldham, *The Seventh Amendment Right to Jury Trial: Late Eighteenth Century Practice Reconsidered, Human Rights And Legal History: Essays In Honour of Brian Simpson* 231 (Katherine O'Donovan & Gary R. Rubin eds., 2000). *See generally, Gibson v. Hunter*, 126 Eng. Rep. 499, 510 (1793).

The motion for summary judgment when applied to employment discrimination cases fails all three core principles. Under current precedent, summary judgment is normally used by the movant to determine for the court that all material facts are unnecessary to be resolved by the trier of facts, even if in dispute by the parties and without regard to whether the material evidence could reasonably be determined to show pretext, or even in cases where there are disputed and material facts in the record that normally would be resolved by a jury verdict. *See, e.g., Holland v. Washington Homes*, 2007 WL 1519065 (4th Cir. 2007) ("Thus, although a reasonable trier of fact would conclude that Washington Homes reported a different reason and date, when combined with the company's innocuous reasoning for these decisions and Holland's failure to present any other evidence-beyond baseless speculation-that DeCesaris's stated reason was pretext, that trier of fact "would be hard-pressed to conclude that this established pretext.") *citing to Price v. Thompson*, 380 F.3d 209, 216 (4th Cir.2005) (affirming district court's award of summary judgment to company in Title VII case where evidence of pretext was equivocal at best).

Thus, the judge of the Court presently substitutes his or her own view of the evidence instead of the jury under current application of summary judgment. Id. Normally, pursuant to any summary judgment motion, the court should only consider any reasonable inferences from the evidence presented in favor of the non-moving party. However, the modern trend has been to reject any disputed evidence in favor of the movant unless the non moving party additionally proves that any reasonable inferences gleaned from the evidence are unlikely to be "equivocal" and/or "weak" inferences for the jury to decide the material facts in the case. Under English common law, the judge of

the court would decide such issues only when the moving party admitted all facts and conclusions as true by the non-moving party's evidence, and/or admitted to any improbable inferences. In other words, the current trend for use of summary judgment motion has been to unfairly decide employment discrimination claims by placing an unequal and unfair fact burden on Plaintiff to prove with highly convincing evidence that unlawful discrimination exists in every case. Discrimination is not easy to establish or prove in the first place, yet the trend is to place higher and higher evidentiary burdens on a Plaintiff to prove such claims. The burdens placed on the parties under summary judgment as applied to employment discrimination claims is disproportionately balanced. *See, e.g., Holland*, 2007 WL 1519065 * (dissent per Judge King) ("[T]he majority relies on Washington Homes' explanation that, in making its false statement to the Maryland Defendant, it was simply acting out of charity. The majority is incorrect in this regard, however, because it is thereby impermissibly resolving a conflict of material fact. In adopting Washington Homes' explanation on why it falsely advised the Maryland Defendant with respect to Holland's termination, the majority is making a credibility determination that is inappropriate in our assessment of a summary judgment award.") *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .   Put simply, it is for a jury, not an appellate court, to decide whether Washington Homes was being charitable or, instead, that it's conflicting positions constitute evidence of discriminatory misconduct."). (emphasis supplied).

Under common law, therefore, the court never balanced the weight or credibility of the evidence submitted by the parties, nor did it determine what a reasonable jury would be able to find.  The court merely ruled upon non disputed facts and conclusions, as alleged by the parties, which normally is the core underlying principle of Rule 56(c). However, modern judicially created procedure for deciding summary judgment motions in relation to employment discrimination cases makes it impossible or unlikely that the Court will resist avoiding the function of performing the role of the trier of fact over the evidence. Thus, in many cases, the judge of the court has unconstitutionally deprived plaintiffs from fair consideration by the jury in violation of the 7th Amendment. *See* Rules 38 and 39, Fed. R. Civ. Proc. For these reasons, summary judgment should not apply to claims of employment discrimination.

## II.    GENERAL STANDARDS OF REVIEW

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). "In the absence of direct evidence of discrimination, disparate-treatment claims under Title VII are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Teneyck v. Omni Shoreham Hotel,* 365 F.3d 1139, 1149 (D.C.Cir.2004). In such cases, "[t]he *McDonnell Douglas* framework establishes 'an allocation of the burden of production and an order for the presentation of proof.' ' *Teneyck,* 365 F.3d at 1149 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  The court must

examine the facts in the record and reasonable inferences in the light most favorable to the nonmoving party, *Wardlaw v. Pickett,* 1 F.3d 1297, 1299 (D.C.Cir.1993),

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire ... or otherwise discriminate against any individual [who is at least forty years old] because of such individual's age." 29 U.S.C. § 623(a)(1). In this Circuit, ADEA claims, like Title VII claims, are evaluated under the *McDonnell Douglas* framework. *See Hall,* 175 F.3d at 1077. To establish a *prima facie* case under the ADEA, the plaintiff must establish that s/he: (1) is within the statutorily protected age group; (2) was qualified for the position; (3) was terminated or not selected for the position; and (4) was disadvantaged in favor of a younger person. *Id.*

In response to a motion for summary judgment, the fact-finder's function is not to weigh the evidence and render a determination as to the truth of the matter, but only to determine whether there exists a genuine factual dispute. *Id.* at 248-49.  The courts have been clear that summary judgment is not to be used as a "trial by affidavit." *Redmand v. Warrener*, 516 F.2 766, 768 (1st Cir. 1975). The Commission has noted that *when a party submits an affidavit and credibility is at issue*, "there is a need for strident cross-examination and summary judgment on such evidence is improper." *Pedersen v. Department of Justice*, EEOC Request No. 05940339 (February 24, 1995).

The Defendant is not entitled to a decision without a hearing as a matter of law.

A.      **Proof by Direct Evidence**

Plaintiff proffers that there is sufficient evidence in the record to decide the instant issues based on direct evidence of discrimination. *See* Plaintiff's Motion, p.18-20.

### B.      Proof by Indirect Evidence

Under the tripartite analysis first enunciated in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973), the first step and initial burden is on the plaintiff to establish that there is some substance to his/her allegation of discrimination. In order to sustain this burden, the plaintiff must establish a prima facie case of discrimination. *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978). This means that the plaintiff must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur.

The plaintiff can establish a *prima facie* case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, *i.e.,* that a prohibited reason was a factor in the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802.  The plaintiff may also set forth evidence of acts from which, if otherwise unexplained, an inference of discrimination can be drawn. *Furnco,* 438 U.S. at 576.

The second part of the required tripartite analysis enunciated in *McDonnell Douglas*, requires that the defendant must articulate a legitimate, nondiscriminatory reason for its action(s). *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). After the defendant has offered the reason for its action, the burden returns to the plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's reason was pretext, that is, it was not the true reason or the action was influenced by legally impermissible criteria. *Burdine,* 450 U.S. at 253; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993).  In order to prevail, Plaintiff must show that the defendant's reasons for its actions were a pretext to mask discrimination, either because the defendant ***more***

*likely* had a discriminatory motive, or because the stated reasons **lacked credibility**. *Burdine*, at 248. Further, evidence of pre-selection operates to discredit the Defendant's explanation for its decision. *Goostree v. State of Tennessee*, 796 F.2d 854, 861 (6th Cir.1986).  Finally, **all that is needed** for a finding of discrimination is that the Plaintiff rebutted the Defendant's alleged non-discriminatory reasons for its actions. *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S. Ct. 2097 (2000).

In this case, the Plaintiff has shown that he was a member of a protected class – an African-American male, over the age of 40, who engaged in prior protected activity. He further proved that he suffered an adverse employment action – two job vacancies at the GS-13 level were posted at lower graded levels when Plaintiff was the best qualified applicant.  Plaintiff was further treated disparately when two females, under the age of 40, were selected into those positions – one without any vacancy announcement.

### C.     Proof by Disparate Treatment

In order to prevail on a claim based on disparate treatment, a Plaintiff must show that: (a) he is a member of a protected class, (b) he experienced an adverse employment action, and (c) other employees outside of his protected class were treated more favorably, or other circumstances surrounding the adverse employment action gave rise to an inference of discrimination. *Marcus v. West*, 2002 U.S. Dist. LEXIS 9848 (D. Ill. 2002).

The case law with regard to disparate treatment explains that there are various ways for a plaintiff to prove his/her case.  Showing more favorable treatment of a similarly situated employee is <u>one</u> way of proving disparate treatment. *Heffernan v. Leavitt*, Equal Employment Opportunity Commission – OFO Petition No. 03A60015.

In this case, there was evidence of disparate treatment, specifically with regard to Ms. Gunther's non-competitive promotion in August 2005 to the downgraded position.

### D.    Proof by Reprisal for Prior Protected Activity

Reprisal refers to prohibited acts of retaliation against those who file EEO complaints, or who otherwise participate in the EEO process as representatives, witnesses, investigators, counselors or program officials. Acts of reprisal are prohibited at 29 CFR 1614.101(b). If the plaintiff is able to provide direct--rather than circumstantial--evidence of reprisal, the defendant can rebut the prima facie showing of reprisal by proving that it would have taken the adverse personnel action regardless of any discriminatory motive. If direct evidence is unavailable, in order to prove a claim of reprisal for protected EEO activity, a plaintiff must prove: 1) participation in protected activity, either through opposition to discriminatory employment practices or through involvement in EEO activity; e.g., filing an EEO complaint; 2) that the defendant was aware of the protected activity; 3) a subsequent adverse personnel action occurred or a hostile work environment was created; and 4) a causal connection between the protected EEO activity and the adverse personnel action. EEO Compliance Manual, Section 8; *McGuire v. Department of the Interior*, EEOC No. 01974949 (1999), 100 FEOR 3063.

A causal connection between an individual's involvement in protected activity and an adverse personnel action can be established by proximity in time. *Speece v. U.S. Postal Service*, EEOC No. 01831994 (1984). A showing of "opposition" to unlawful or discriminatory employment practices requires a plaintiff to have had a reasonable, good faith belief that the practice/action complained of amounted to prohibited discrimination. *Brown v. Department of Energy*, EEOC No. 01973113 (1998).

In this case, Plaintiff provided sufficient evidence to show the Defendant's retaliation toward him was based on his prior protected activities. Plaintiff engaged in prior protected activity when he filed two prior administrative complaints, as well as a civil action in federal court, alleging similar acts of discrimination by Ms. Allen. The Defendant attempts to mask Ms. Allen's retaliation by highlighting the positive personnel actions she approved for Plaintiff in 1997 and 1999. *See* Defendant's Motion, p. 4, 21, FN 7. But those actions were long before the protected activities in this matter and fail to take into account the knowledge, skills and abilities Plaintiff demonstrated to merit those positive personnel actions. The very fact that Ms. Allen failed to institute any positive personnel actions between 2002 and 2006, despite repeated requests by Plaintiff, exemplifies the fact that her actions were based on personal bias and illegal motives rather than meritorious ability.

<u>ANALYSIS</u>

The Defendant contends that Plaintiff cannot make out a prima facie claim of discrimination because he failed to exhaust his administrative remedies. This argument must fail for several reasons. First, as the Defendant admits in its motion, *See* Defendant's Motion, p.8, FN 1, Plaintiff did file an administrative complaint of discrimination in August 2005, just days after he learned that Ms. Gunther was non-competitively promoted into the downgraded GS-13 vacancy left by Ms. Swann. *See* Exhibit 3; *see also* 29 CFR 1614.105(a)(1) specifically provides that:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

With regard to that adverse action, Plaintiff did meet all filing requirements – his

administrative complaint was filed within 45 days of the date the matter alleged to be

discriminatory.

Second, as the Defendant admits in its motion, *See* p. 7-8, Plaintiff did file

intent to file in federal court notice to EEOC within 180 days of the August incident. *See*

Exhibit 4.  The August 2005 incident is specifically material because that is when

Plaintiff learned of the on-going and continuous nature of the adverse actions.  Plaintiff

did not suspect discriminatory motive with regard to Ms. Johnson's promotion into the

downgraded GS-13 position left by Ms. Love in January 2004 until the deposition of Ms.

Allen in June 2005 and then the non-competitive promotion to Ms. Gunther in August

2005.  The combination of those two events lit the bulb in Plaintiff that there was

discriminatory motive, based on age, in both of those employment decisions.  29 CFR

1614.105(a)(2) specifically provides that

> (2) The defendant or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, **that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred**, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the defendant or the Commission. (Emphasis added)

In this case, Plaintiff had no reason to believe that Ms. Allen's decision to downgrade the

position in 2004 was discriminatory until she made inferences to age in her deposition in

June and then downgraded the other vacancy in August 2005.  These facts are sufficient

to establish that Plaintiff did file his notice within 180 days of learning of the facts that

were discriminatory.  Furthermore, the Plaintiff requests that the court grant equitable

tolling of the first adverse action – downgrading the position in 2004 – for the time period

during which Plaintiff had no knowledge of the illegal acts.  In the alternative, the court

should conclude that the downgrading of each position was a distinct and separate

adverse action – Plaintiff, therefore, is entitled to relief for the timely complaint with

regard to Ms. Gunther's promotion.

I.    **Plaintiff established a prima facie case of discrimination based on age, race and sex.**

Plaintiff established a prima facie case of discrimination based on direct and

indirect evidence of discrimination.  Plaintiff is a member of a protected class – an

African-American male, over the age of 40, who engaged in prior protected activity.  He

further proved that he suffered an adverse employment action – two job vacancies at the

GS-13 level were posted at lower graded levels when Plaintiff was the best qualified

applicant.  Plaintiff was further treated disparately when two females, under the age of

40, were selected into those positions – one without any vacancy announcement.

The evidence in the record supports Plaintiff's position.  Ms. Allen approved

positive personnel actions for Plaintiff between 1997 and 2002, but did not approve one

request after that time period. *See* Exhibit 2, p.10-12.  In January 2004, Ms. Joyce Love a

GS-13 grants specialist retired. *Id.*, p.12-13.  Plaintiff applied for that position non-

competitively based on the increased responsibilities and the fact that he performed same

job functions as Ms. Love at the time she retired at the GS-13 level. *Id.*, p.13; *See*

Exhibits 6-7.

Plaintiff learned that Ms. Johnson was competitively promoted to GS-12 level in

April 2004. *Id.*, p.16, 20.  In March 2005, Ms. Allen hired another female grants

specialist, Ms. Deborah Thompson, *Id.,* p.24-25, and then hired Ms. Gunther for the

lower graded grants specialist position in August 2005. *Id.*, p.29-30.  There was no

vacancy announcement for the position for which Ms. Gunther was selected; she was an applicant from March 2005 posting and selected from that certification. *Id.,* p.30-32. When Plaintiff learned of the selection of Ms. Gunther in August, he immediately contacted the EEO manager, Ms. Jacqueline A. Canton, and Ms. Arlene Brandon, the EEO Specialist. *Id.*, p.34-36.  Plaintiff did suffer an adverse employment action; he was denied promotion to GS-13 level when Ms. Love, a GS-13 team leader, resigned in January 2004, and Ms. Allen posted the position at journeymen levels rather than promote Mr. Hunter. *Id.,* p.55.  The same occurrence took place between May and August 2005, when Ms. Swann, also a GS-13 team leader, left. *Id.,* p.55-56.  Plaintiff was disparately treated, as well, when Ms. Allen competitively and non-competitively hired and/or promoted at least 7 female employees under the age of 40. *Id.*, p.73-80.

The Defendant's over-reliance on the argument in *Taylor* must fail for several reasons.  First, the Defendant failed to properly cite the full statement it asserts in context. The court explained that the Plaintiff in *Taylor* could not maintain a retaliation claim because the alleged violations were not adverse actions:

> Equally damaging for Pederson and Taylor, we do not believe that temporary designation as acting section chief is one of the "terms, conditions, or privileges of employment" compassed by the Act. 12 U.S.C. § 1441a(q)(1). The phrase "terms, conditions, or privileges of employment" is identical to the language of Title VII, 42 U.S.C. § 2000e-2(a). Courts applying Title VII have consistently focused on "**ultimate employment decisions such as hiring, granting leave, discharging, promoting**, and compensating ... [and not] interlocutory or mediate decisions having no immediate effect upon employment conditions...." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981) (en banc); accord *Dollis v. Rubin,* 77 F.3d 777, 781-82 (5th Cir.1995). This circuit has never decided the issue. See *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1555 (D.C.Cir.1997) (noting issue without deciding). But see *Hayes v. Shalala,* 902 F.Supp. 259, 266-67 (D.D.C.1995) (rejecting *Page*). (Emphasis Added)

*Taylor v. FDIC*, 132 F.3d 753, 764-765. (D.C. Cir. 1997).

Second, as this same court noted in *Elam v. D.C. Fir & EMS Dept.*, not reported, 2005

WL 1903557, (D.D.C. 2005), that court specifically stated that it was not deciding that

issue:

> Defendants quote dicta from *Taylor v. FDIC,* 132 F.3d 753, 764 (D.C. Cir. 1997) to support their argument that a non-promotion to an acting position cannot constitute an "adverse employment action." However, the Court in *Taylor* expressly stated that it was not deciding that issue. *Id.* The Court's decision turned not on the fact that the promotion was temporary, but on the fact that the denial was so "minor" that plaintiff failed to make his *prima facie* showing of discrimination. *Id.*

That case goes on to hold that an employee need not apply for a position in order to make

out a prima facie claim of discrimination based on failure to promote:

> First, although a plaintiff in a Title VII or ADEA case must usually show that he applied for a promotion and was rejected, a plaintiff is not required to do so when the position was not posted and the plaintiff did not know the position was open. *See Cones,* 199 F.3d at 518 (failure to apply for a position where employer never opened the position for competition did not defeat *prima facie* case of discrimination under Title VII); [FN8] *Lockridge v. Bd. of Tr., of the Univ. of Arkansas,* 315 F.3d 1005, 1011 (8th Cir.2003) (en banc) (noting that a plaintiff may be excused from actually applying for promotion where "the job opening was not officially posted or advertised and either ... the plaintiff had no knowledge of the job from other sources until it was filled, or ... the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application") (internal emphasis omitted); *EEOC v. Metal Serv. Co.,* 892 F.2d 341, 348 (3d Cir.1990) ("Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer.")

## II.    The Defendant's legitimate, non-discriminatory reasons for its action are pretext for discrimination.

Like the Defendant's proffered reasons in *Elam,* the Defendant's legitimate non-

discriminatory reasons in this matter certainly raise an inference of discrimination.  In

*Elam*, there was evidence that the deciding official selected an individual based on her

sex: "'although females have been members of the Division for fifteen years, none had

ever been in supervisory/officer positions.'" *Elam*, not reported, 2005 WL 1903557, p.7

(D.D.C. 2005).  The court reasonably concluded that a jury could take that statement to

mean the selectee was chosen based on her sex.  Similarly in this matter, the evidence

that Ms. Allen selected individuals based on their age can be reasonably interpreted by a

jury to raise an inference of discrimination, and at the very least a mixed motive analysis.

In 1999, Ms. Allen requested that the GS-12 grants specialist position be

upgraded to the GS-13 level. *See* Allen Deposition attached as Exhibit 1, p.9-10, 90-94.

She subsequently attempted to get two female GS-12 grants specialist upgraded to the

GS-13 level non-competitively. *Id.* at 11-13.   She admitted that she assigned GS-13 level

work to those two female GS-12 employees for more than a year prior to their

competitive promotions. *Id.* at 14-16.

Ms. Love retired in December 2004 and Ms. Swann ceased working as GS-13

grants specialist in April 2005. *Id.* at 22-23.  At that very moment, the Defendant

underwent a reorganization or restructuring, though there is no official paperwork, and

both positions were downgraded.  The documentary evidence further provides that Ms.

Allen eliminated the two funded vacant positions just three weeks after Plaintiff

requested promotion into the vacant GS-13 position. *See* Exhibits 6-7.  A reasonable jury

could conclude that the decision to downgrade the positions was based on discriminatory

motive against Plaintiff.  That conclusion is specifically supported by the letter from Mr.

Castro that stated Plaintiff would be considered for next available GS-13 vacancy and

that Ms Allen would provide him with assignments at GS-13 level. *See* Exhibit 1, p 25-

30.  Ms. Allen later admitted that work assignments were provided by Ms. Stinson and

Ahern, and that she never instructed either of them to assign Plaintiff higher graded work,

pursuant to the letter from Ben Castro. *Id.* at 33-36.

The reason Ms. Allen posted the vacant positions at the GS 9/11/12 level was to hire younger workers: "It was my decision.  We have an office with very senior persons in the office and we are attempting to get people in that will be in the position to do the work of the office for a period of time." *See* Exhibit 1, p.37.  She further stated: "And, two, I wanted to bring in some potentially younger candidates, younger in the sense of career, not necessarily age, giving them the opportunity and, hopefully, they would stay in the office for a period of time, looking for longevity." *Id.* at 123.  These statements constitute direct and indirect evidence that age played a role in the decision to post the vacancies at lower graded levels.  She specifically stated that age was not necessarily the purpose, inherently admitting that age was at the very least a mixed motive. Furthermore, Plaintiff takes umbrage with the Defendant's stance that neither statements constituted admissible evidence capable of creating a genuine issue of fact. *See* Defendant's Motion, p.20-21, FN 7.  That is the very determination that the trier of fact is expected to make – whether in the context of the evidence at hearing Ms. Allen's statements can be reasonably interpreted to mean age was a factor.

Similarly, the Defendant's reliance on the longevity in position argument is clear pretext for discrimination.  If longevity in position was the true goal of the Defendant then it would have promoted Plaintiff, an employee who had worked for the office for over 4 years, to keep him on staff, and then posted his vacancy at the lower graded level. A reasonable jury could conclude there is an inference of discrimination, based on these set of facts, and that the Defendant's reasons for its actions were pretext for discrimination.

Ms. Allen had knowledge that Mr. Hunter was the only grants specialist at the GS-12 level and above with a bachelor's degree of any kind. *See* Exhibit 1, p.40-43.  In addition, Plaintiff requested a promotion to the GS-13 level that Ms. Allen previously rejected. *Id.* at 42-48.  The Defendant's proffered justification that Ms. Allen promoted Plaintiff in 2002, *See* Defendant's Motion, p.21, therefore could not have discriminated against him in 2004 and 2005 must fail for several reasons.  First, the evidence in the record shows that while Ms. Allen did approve positive personnel actions for Plaintiff between 1997 and 2002, she did not approve one positive personnel action since that time period. *See* Exhibit 2, p.10-12.  Second, the argument fails to take into account the grievances and complaints of discrimination that Plaintiff filed between 2002 and 2005, specifically identifying Ms. Allen as a discriminating official.  The Defendant cannot rely on the positive employment actions that Ms. Allen undertook because there were intervening acts – the filing of grievances, EEO complaints, and civil actions – that affected the decisions made after 2002.

**III.    Plaintiff established a prima facie case of discrimination based on reprisal.**

Title VII, as amended, makes it unlawful for Defendant "to discriminate against any of his employees … because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C.A. §2000e-3(a). *Burlington Northern Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2411 (2006).  The anti-retaliation provision of Title VII, unlike its substantive sections, is not limited to discriminatory actions that only affect the terms and conditions of Mr. Allen's employment, the so called "adverse

employment action". *Id.* at 2413-2414. "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414. *citing, Rochon v. Gonzales*, 438 F.3d 1211, 1218-1219 (D.D. C. 2006). The Court of Appeals for the D.C. Circuit specifically held that "[t]he statutory retaliation clauses [including that of Title VII] prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity," *citing the  EEOC Compliance Manual, §8-II.D.3 (1998)*". (emphasis supplied).

The Court also held that a "causal connection ⋯ may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse ⋯ action took place shortly after that activity." *Accord, Burlington*, 126 S.Ct. at 2415-2416. ("*a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination*."). (emphasis supplied).

In order to establish a prima facie case of reprisal, the Plaintiff must demonstrate that:

(1) the plaintiff engaged in Title VII, ADEA or other protected activity;

(2) the Defendant was aware of his protected activity;

(3) plaintiff was subjected to adverse treatment by the Defendant; and

(4) a nexus exists between the protected activity and the adverse action.

*See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986).

Plaintiff can meet the minimum requirements to prove a prima facie claim of

discrimination based on retaliation. Plaintiff engaged in prior protected activity when he filed two prior administrative complaints, as well as a civil action in federal court, alleging similar acts of discrimination by Ms. Allen. The Defendant had knowledge of those complaints. *See* Exhibit 1, p.83-86. Lastly, Plaintiff did suffer an adverse action when the GS-13 vacancies were downgraded so that Ms. Allen could promote two female employees under the age of 40 rather than promote Plaintiff.

It follows then that any "mixed motive" analysis would also necessarily preclude granting summary judgment to the Defendant. That's because of the reasonable inference that a lawful and unlawful motive existed for Ms. Allen's decision to downgrade the positions. The Defendant cannot through summary judgment argue that it would have made the same decision in the absence of Plaintiff's race, age, color, national origin and/or protected activity. The Defendant cannot argue by motion at summary judgment that it would have still not selected Plaintiff, because the material facts show that Ms. Allen only requested the position be posted at the lower graded level after Plaintiff requested promotion into the vacancy. Furthermore, Ms. Allen was the one that had previously requested an upgrade in the two positions for her female grant specialists.

Reviewing the competing inferences from the available evidence in the record, reasonably and in the light most favorable to Plaintiff, any trier of fact could reasonably conclude that Ms. Allen's actions were based on Plaintiff's numerous prior complaints of discrimination alleging she was a discriminating official. Furthermore, it is reasonable to conclude that similarly situated employees would be precluded from vindicating their rights under Title VII after observing the Defendant's actions in this matter.

CONCLUSION

For the foregoing reasons and having shown good cause, Plaintiff respectfully requests that the court **DENY** in full, the Defendant's Motion for summary judgment.


Respectfully Submitted,


 /s/ JIW, Esq.
Michael J. Snider, Esq. MD #24695
Ari Taragin, Esq. MD #27409
Jeffery C. Taylor, Esq. MD #15528
Jason I. Weisbrot, Esq. MD #28074
Snider & Associates, LLC
104 Church Lane, Suite 100
Baltimore, MD 21208
410-653-9060 phone
410-653-9061 fax

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June 2007, a copy of Plaintiff's Opposition to the Defendant's Motion for Summary Judgment was filed via Electronic Case Filing (ECF) system, providing service to:

> JANE M. LYONS, DC Bar# 451737
> Assistant U.S. Attorney
> 555 4th Street, N.W. – Room E4822
> Washington, DC 20520


                                    /s/
                                    Jason Weisbrot, Esq.